UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA TOLLIVERS,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civ. No. 11-6358 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Patricia Tollivers ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") benefits Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 1381-1383(f). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

    **I.    ADMINISTRATIVE FRAMEWORK**

Under the Act, a person who has a "disability" is entitled to SSI payments from the Social Security Administration ("SSA"). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The definition is qualified, however, as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairment are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

1

### A. The Five-Step Sequential Analysis

Acting pursuant to its rulemaking authority, the SSA has promulgated regulations establishing a five-step sequential evaluation process to determine if a claimant has a disability. 20 C.F.R. § 404.1520 (2003). At step one, the SSA will find that a claimant is not disabled unless he demonstrates that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the SSA will find no disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant successfully demonstrates that he has a severe impairment, the SSA determines at step three whether the impairment is on a list of impairments is presumed severe enough by the SSA to render one disabled; if so, the claimant qualifies. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment is not on the list, the inquiry proceeds to step four and the SSA assesses whether the claimant has the residual functional capacity ("RFC") to perform his previous work. Unless he shows that he cannot, he is determined not to be disabled. If the claimant survives step four, the fifth step requires the SSA to consider "vocational factors" (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c). Unlike the first four steps in the evaluation process, the burden of proof at step five is on the agency. *See Ramirez v. Barnhart*, 372 F.3d 546, 550-551 (3d Cir. 2004).

## II.    PROCEDURAL BACKGROUND

On February 27, 2007, Plaintiff filed an application for SSI disability benefits. (R. 77-79.) Plaintiff's claims were denied initially on October 12, 2007 and upon reconsideration on January 18, 2008. (R. 35-36.) Thereafter, on October 17, 2009, Plaintiff appeared before Administrative Law Judge James Andres (the "ALJ") at a hearing on her disability claims. (R. 37-69.)

On October 30, 2009, the ALJ issued a decision finding that Plaintiff was not disabled. The ALJ examined the record and determined that: (1) at step one, Plaintiff had not engaged in substantial gainful activity since February 27, 2007, except for several months as a school bus monitor from July 2008 to August 2008; (2) at step two, that Plaintiff had several severe impairments including diabetes mellitus, bipolar disorder, depression, obesity, hypertension, asthma, and osteoarthiritis; (3) at step three, that Plaintiff's impairments did not meet or equal the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) at step four, that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. 416.967(b),[1] but that Plaintiff was limited to

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

performing jobs with simple instructions, and thus, that Plaintiff had the RFC to perform her past relevant work as a school bus monitor; and (5) at step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ found that alternatively, Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.

In arriving at that determination, the ALJ indicated that he primarily relied on: (1) the medical assessments of Dr. Francky Merlin, who performed a consultative examination on Plaintiff on September 24, 2007, in which he diagnosed Plaintiff with hypertension, diabetes, asthma, and obesity, and noted that Plaintiff had full use of her hands and arms and the ability to squat and walk normally (R. 253-55); (2) the medical assessment of Dr. Amy Brams, who performed a psychiatric assessment on Plaintiff on August 14, 2007 (R. 262-75) and concluded that "claimant is able to follow simple instructions, attend and concentrate, keep adequate pace and persist, [and] relate and adapt to routine tasks in a work situation" (R. 279); (3) Plaintiff's lack of credibility with regards to her statements concerning the intensity, persistence, and limiting effects of her physical and mental impairments (R. 14.); and (4) the fact that Plaintiff performed past relevant work as a school bus monitor for roughly three months in 2008.  Furthermore, the ALJ indicated that he assigned little weight to the medical opinions of Dr. Rita Goradia, Dr. Salvatore Milazzo, Dr. Naphyali Britman, and Dr. Jack Baharlias.  (R. 15-16.)

Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on August 24, 2011.  Plaintiff now brings the instant appeal, challenging the ALJ's determination that she was "not disabled" from February 27, 2007.

### III.   STANDARD OF REVIEW

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir.1999).  The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).  The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

---

controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. 416.967(b).

## IV. DISCUSSION

Plaintiff advances the following arguments on appeal: (1) the ALJ failed to properly consider the medical opinion evidence; (2) the ALJ failed to consider Plaintiff's foot and knee disorders, left shoulder injuries, general anxiety disorder, chronic headaches at step two; (3) the ALJ's RFC finding included no limitation in concentration, persistence, or pace at step four; (4) the ALJ failed to properly consider the exacerbating effects of Plaintiff's obesity; and (5) the ALJ's determinations that Plaintiff's 2008 school bus monitor position constituted past relevant work and that Plaintiff retained the RFC to perform that work were improper.

### (1) The ALJ Adequately Reviewed the Record Evidence

The ALJ has the power to determine which medical opinions he accepts and rejects, and the weight to give each opinion. 20 C.F.R. § 404.1527(e). Further, the ALJ is allowed to give great weight to a medical expert's opinion if the assessment is well supported by the medical evidence of record. *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 961 (3d Cir. 2006) (upholding ALJ's determination that claimant had RFC to perform light work even though it was based largely on assessment of one medical expert). But the ALJ must explain why he discounts or rejects certain evidence. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (remanding case because ALJ did not adequately set forth reasons for determining claimant's RFC); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (illustrating that ALJ considered and discussed appropriate factors in reaching his conclusion); *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (finding that ALJ's decision and explanation in regards to claimant's physical limitations was supported by substantial evidence). The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (ruling that the ALJ's conclusory statements were inadequate for the court to conduct a proper review).

In this case, the ALJ reviewed Plaintiff's extensive medical records and ultimately ruled that Plaintiff was not disabled. In making that determination, the ALJ afforded great weight to the medical assessments of Dr. Francky Merlin and Dr. Amy Brams. And their assessments are supported by the medical evidence of record. Nonetheless, Plaintiff asserts that the ALJ acted improperly because he assigned little weight to the medical opinions of Dr. Goradia, Dr. Baharlias, and Dr. Milazzo, and altogether failed to consider the medical opinion of Plaintiff's treating podiatrist, Dr. Mariolis. The Court disagrees.

Here, the ALJ provided sufficient explanation as to why he assigned little weight to the medical opinions of Dr. Goradia, Dr. Milazzo, and Dr. Baharlias. Specifically, the ALJ noted that: (1) Dr. Goradia's position that Plaintiff could not work was inconsistent with her own treatment notes and with Plaintiff's past work experience as a school bus monitor (R. 15, 402-429, 52); (2) Dr. Milazzo's opinion incorporated numerous

references to conditions that were unsubstantiated by other records in Plaintiff's file (R. 15, 452); and, (3) Dr. Baharlias was not a treating physician and only examined Plaintiff in connection with her Social Security application. (R. 460, 15-16.) Further, the ALJ noted that the discounted opinions were inconsistent with other medical evidence in the case, including the opinions of Dr. Merlin, Dr. Veena Dube, Plaintiff's treating psychiatrist (R. 235-238), and Dr. Brams. Moreover, although the ALJ never explicitly referred to Plaintiff's treating podiatrist Dr. Mariolis by name, the ALJ did note that Plaintiff only had a limited history of seeking treatment for her feet. (R. 14.)

In short, throughout the decision, the ALJ indicated the evidence he accepted and the evidence he rejected; he also provided reasons for discounting evidence. *See Diaz*, 577 F.3d at 505-06; *Burnett*, 220 F.3d at 121. Thus, the ALJ has committed no error in the manner in which he considered the medical evidence.

### (2) The ALJ's Non-Consideration of Plaintiff's Foot and Knee disorders, Shoulder Injuries, General Anxiety Disorder, Chronic Headaches at Step Two was Proper

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41. An impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.*, physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience. *See Bowen*, 482 U.S. at 149-51. The claimant has the burden of showing that an impairment is severe. *Id*. at 146 n. 5. Moreover, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working. See 20 C.F.R. §§ 404.1520(c), 404.1521(a); *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).

Plaintiff asserts that the ALJ erred at step two of the analysis when he failed to find that a number of her impairments were "severe," including her foot and knee disorders, left shoulder injuries, general anxiety disorder, and chronic headaches. The Court disagrees. First, as to Plaintiff's knee ailments, the ALJ explicitly noted that magnetic resonance images ("MRIs") of Plaintiff's knees indicated only moderate effusion in both knees. (R. 14.) As to Plaintiff's foot ailments, the ALJ noted that Plaintiff had a limited history of seeking treatment for her feet. (R. 14.) As to Plaintiff's left shoulder injuries, the only objective medical evidence supporting those injuries is a

5

two-page letter prepared by a Dr. Howard Kessler, indicating that "the study of [the MRI of Plaintiff's left shoulder] is somewhat limited."  (R. 439.)  And as to Plaintiff's general anxiety disorder and chronic headaches, the record demonstrates that those diagnoses were made by Dr. Rita Gordita, whose medical opinion was assigned little weight by the ALJ.  In short, because the objective medical evidence in the record fails to support Plaintiff's assertion that any of these ailments are severe, let alone that they significantly limited her ability to perform work activities or cope with the mental demands of working, the ALJ did not err in failing to find that any of these ailments were "severe" at step two of his analysis.

### (3) The ALJ's RFC Assessment Properly Accounts for Plaintiff's Mental Limitations in Concentration, Persistence, and Pace

Plaintiff asserts the ALJ's step four determination that Plaintiff could perform jobs with simple instructions does not properly account for her limitations in concentration, persistence, and pace.  The argument is not supported by the record.  In determining that Plaintiff had the RFC to perform jobs with simple instructions, the ALJ gave great weight to the medical opinion of Dr. Amy Brams, whose Mental RFC Assessment specifically states that "[Plaintiff] is able to follow simple instructions, attend and concentrate, keep adequate pace and persist, [and] relate and adapt to routine tasks in a work situation."  (R. 279.)  The ALJ also noted that this determination was consistent with Plaintiff's testimony.  (R. 15.)  In short, the record supports the ALJ's determination that Plaintiff could follow simple instructions and perform routine tasks in a work situation.  (R. 279.)

### (4) The ALJ Properly Considered Plaintiff's Obesity, in Combination with Her Other Impairments

Plaintiff argues that the ALJ did not properly consider her obesity in combination with her other impairments. This argument also fails.  SSR 02-1p provides guidance on the evaluation of obesity in disability claims filed under Title XVI of the Act. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002).  The regulation focuses on the combined effect of obesity and other severe impairments afflicting the claimant. *Diaz*, 577 F.3d at 503 (remanding the case because ALJ did not meaningfully consider effects of the claimant's obesity in combination with her other impairments).  The regulation instructs ALJs to consider the combined effects of obesity with other impairments at every step of the sequential evaluation process, because the combined effects may be greater than the effects of each impairment considered separately. *Id.*; *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005); SSR 02-1p, 2002 WL 34686281, at *1.

Here, the record reflects that the ALJ did just that.   First, at step two, the ALJ determined Plaintiff's obesity was one of the "severe" impairments which caused more than minimal limitations in Plaintiff's ability to perform basic work activities.  And in arriving at his step four determination that Plaintiff was physically capable of performing light work, the ALJ gave great weight to the September 24, 2007 medical assessment of Dr. Merlin, in which he indicated that Plaintiff – who weighed 282 pounds at that time –

was obese but "had no difficulty getting up from a seated position or getting on and off the examining table," "had full use of both hands and arms in dressing and undressing," and had no impairment in her "[g]rasping strength and manipulative functions are not impaired." (R. 254.)

### (5) The ALJ's Determination that Plaintiff Could Perform Her Past Relevant Work as a School Bus Monitor was Proper

Plaintiff also alleges that the ALJ erred <u>first</u>, by determining that Plaintiff's school bus monitor position from June 2008 to August 2008 was past relevant work, and <u>second</u>, that Plaintiff retained the RFC to perform that position. The Court disagrees.

Past relevant work is any work performed within the past 15 years that was (1) substantial gainful activity; and (2) of sufficient duration for claimant to learn how to perform the job. 20 C.F.R. §§ 416.960(b), 416.965. Plaintiff asserts that the ALJ should have instead found that her position as a school bus monitor was actually an unsuccessful work attempt, which is defined as any work where, after working for a period of 6 months or less, a claimant is forced by her impairment(s) to "stop working." 20 C.F.R. § 416.974(c). Here, the record supports the ALJ's finding that Plaintiff's school bus monitor position was past relevant work. Indeed, the ALJ found that Plaintiff's school bus monitor position was performed within the past 15 years, for enough time for Plaintiff to learn how to perform it, and the job was substantial gainful activity.[2] (R. 131, 53-54.) The ALJ further noted that Plaintiff's initial explanation for leaving her school bus monitor position centered on its part-time nature rather than her own impairments. (R. 134.) In short, substantial evidence in the record supports the ALJ's classification of Plaintiff's school bus monitor position as past relevant work.

Plaintiff also argues that the ALJ erred in determining that Plaintiff retained the RFC to perform her school bus monitor position, which is listed in the Dictionary of Occupational Titles ("DOT") as light, unskilled work. DOT 372.667-042. Per the skill level definitions used in disability decisions, this is a Level 2 position which requires the mental ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT Appendix C Section 3. Plaintiff asserts that the ALJ's RFC assessment, which limits her to simple work, precludes her from performing her school bus monitor position, as Level 2 positions require the mental ability to follow detailed instructions. (Pl's Br. at 29-30.) However, despite Level 2's "detailed but uninvolved" instruction requirement, the Third Circuit has found that plaintiffs with RFCs limited to simple, repetitive, and routine work could still perform Level 2 positions. *Jones v. Astrue*, 570 F.Supp.2d 708, 716 (E.D. Pa. 2007) aff'd sub nom. *Jones v. Comm'r of Soc. Sec.*, 275 Fed.App'x 166 (3d Cir. 2008) ("No conflict between RFC reasoning level 2 and an RFC limitation to simple, repetitive or routine tasks.") (emphasis added);

---

[2] In June 2008, Plaintiff earned $1,142 from her school bus monitor position, R. 132, which is above the substantial gainful activity the 2008 earnings requirement of $940 a month. Program Operations Manual System DI 10501.015.B "Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity" Table 2.

*Provenzano v. Comm'r of the Soc. Sec. Admin.*, 2011 WL 3859917, *7 (D.N.J. Aug. 31, 2011). As such, the ALJ did not err in ruling that Plaintiff retained the RFC to perform her past relevant work as a school bus monitor.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

       /s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 1, 2013**